UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES C. WHITE,                                    No. C-14-5584 EMC

                    Plaintiff,

                                                   **ORDER GRANTING PLAINTIFF'S**
          v.                                       **MOTION FOR SUMMARY JUDGMENT**
                                                   **AND REMANDING CASE TO**
CAROLYN W. COLVIN,                                 **ADMINISTRATIVE LAW JUDGE**
Acting Commissioner of Social Security
                                                   **(Docket No. 13)**
                    Defendant.

_____/


## I.   INTRODUCTION

On January 24, 2011, Plaintiff James C. White applied for disability insurance benefits pursuant to Title II of the Social Security Act, alleging disability beginning on October 3, 2008. White apparently injured his neck and left shoulder on August 25, 2008, while he was working on the construction of the San Francisco-Oakland Bay Bridge, and has been unable to work since. *See* Administrative Record (AR) 769. In addition to his claimed physical disabilities, White also alleges significant mental impairment, and specifically depression and insomnia. *See* AR 14. His application was denied initially and upon reconsideration. *See* AR 1. White requested a hearing before an Administrative Law Judge (ALJ), and a hearing was held on May 8, 2013. *See* AR 7. The ALJ concluded in a written decision that White was not disabled. AR 9-30. The Appeals Council denied White's request for review, and so the ALJ's decision is the final decision of the Commissioner of Social Security. *See Brown-Hunter v. Colvin*, -- F. 3d --, 2015 WL 4620123, at *3 (9th Cir. Aug. 4, 2015).

1    White brought this action on December 22, 2014, and moved for summary judgment on

2    April 27, 2015.  Docket No. 13.  In his motion for summary judgment, White claims that the ALJ

3    made two errors which require reversal of the decision that White is not entitled to benefits.

4    Specifically, White argues that (1) the ALJ improperly found that he suffers from only "mild

5    depression" despite extensive evidence in the record that White suffers from a more severe form of

6    depression; and (2) the ALJ improperly found that certain of his testimony lacked credibility.  For

7    the reasons explained below the Court finds that the ALJ so erred, grants the Plaintiffs' motion for

8    summary judgment, and remands this case to the agency for further proceedings consistent with this

9    Order.

10                                   **II.    BACKGROUND**

11   A.     Factual Background

12          White injured his neck and left shoulder on August 25, 2008, while he was working on the

13   construction of the San Francisco-Oakland Bay Bridge.  AR 769.  He went to the hospital

14   immediately after he suffered his injury, and subsequently returned to work for about a month on

15   "modified duty."  *Id.*  White has not worked since October 3, 2008.  AR 170, 205.  Ultimately,

16   White underwent surgery on his left shoulder on June 9, 2009.  AR at 769.  White required a second

17   shoulder surgery in August 2010 "due to pain and weakness that occurred as part of the healing

18   process for his first surgery."  *Id.*; *see also* AR 376–81, 740–43.  Apparently, White's neck pain has

19   gone untreated.  AR 769.

20          There is no dispute that White's shoulder and neck injuries are "severe."  *See* Docket No. 14

21   (Opp. Br.) at 1-3; AR 14 (ALJ found White had "severe . . . left shoulder impingement; left median

22   nerve compression; [and] cervical degenerative disc disease").  The only issues on appeal are the

23   ALJ's determination that White suffered from only "mild depression," and the ALJ's determination

24   that White's testimony regarding the intensity, persistence, and limiting effects of his subjectively

25   reported symptoms of pain and disability was not fully credible.

26          White was examined by various physicians or psychologists regarding his mental health, and

27   his medical records were also reviewed by two non-examining doctors, as the Court summarizes

28   below.

2

**United States District Court**
For the Northern District of California

1.     Dr. Jacob Rosenberg (Examining Physician)

In March 2011, White was examined by Dr. Jacob Rosenberg (a qualified medical evaluator) as a part of his worker's compensation case.  AR 686.  Dr. Rosenberg performed a Beck Depression Inventory.  AR 694.  White received a score of 14.  *Id.*  Although the score suggested White's depression was not a substantial impairment, Dr. Rosenberg conceded, "[w]ith regard to any depression, that is beyond the scope of this evaluator . . . I am not a psychiatric evaluator and if [White] is going to file a psychiatric claim, then a psychiatric med-legal evaluation is necessary." AR 695.

2.     Dr. Leonard Derogatis (Examining Psychologist)

On April 6, 2011, Leonard Derogatis, Ph. D. conducted three psychological tests on White: SCL-90-R,  Pain Patient Profile (P-3), and Millon Behavioral Medicine Diagnostic.  AR 722–39. White's primary care doctor at the time, Dr. Babak Jamasbi, later summarized the results of the three tests and concluded that White had slightly elevated anxiety and depression secondary to his chronic shoulder and neck pain.  AR 658, 665.  In Dr. Derogatis's actual reports, he noted that White was clearly "experiencing significant psychological difficulties," AR 274, and that White reported "a moderately high level of depressive symptoms." AR 729.  Dr. Derogatis characterized White's behavior as "typified by a persistent undercurrent of sadness and tension with occasional periods of moodiness, anxiety, and irritable outbursts of temper."  AR 729.  It appears that Dr. Derogatis's interpretive reports did not become part of the record in White's Social Security case until March 2013.  *See* AR 289.

3.     Dr. Burnard Pearce (Non-Examining Psychologist)

On April 25, 2011, Dr. Burnard Pearce was asked to review White's medical records for the purpose of evaluating his disability status in connection with White's benefits application.  *See* AR 598.  Dr. Pearce reviewed the evidence then in White's medical records – which did not include Dr. Derogatis's reports – and found no indication of any discrete mental impairment, or work-related functional limitations resulting from possible mental impairment.  AR 586, 598.  Dr. Pearce noted that based on the records he had reviewed, "[t]reatment for a mental impairment has not been recommended or received."  AR 598.

United States District Court

For the Northern District of California

4.   Dr. Jeremy Coles (Examining Psychologist)

On January 10, 2012, White underwent a psychological evaluation by licensed psychologist Jeremy Coles as part of his worker's compensation case.  AR 767.  In addition to conducting an in-person examination of White, Dr. Coles also reviewed the evidence then in White's Social Security case file. AR 772-78.  Dr. Coles did not review Dr. Derogatis's reports because, as noted above, those reports did not become a part of White's record until March 2013.  *See* AR 289, 772-78.

Dr. Coles diagnosed White with a "major depressive disorder of moderate intensity," and noted that White's "attention and concentration [have] been compromised by his dysphoria."  AR 788–89.  Dr. Coles noted that White's "deficits in this area [(*i.e.*, attention and concentration)] were shown repeatedly during the evaluation when he had trouble following our conversation and appeared distracted."  AR 789.  Dr. Coles remarked that White's attentional deficits "may interfere with his ability to carry out basic tasks of daily life," AR 782, and "his ability to follow complex directions." AR 793.  White's symptoms included depressed mood most of the day, insomnia, agitation, fatigue, and feelings of worthlessness.  AR 790.  Dr. Coles further noted that White's everyday symptoms of "agitation, concentration difficulties, depressed mood, and insomnia" interfered with his social functioning.  AR 794.  Dr. Coles assigned White a Global Assessment of Functioning (GAF) score of 55, indicating "moderate difficulty in social, occupational or school functioning."  AR 20, 790, 793; *see* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., text rev. 2000) (*DSM-IV-TR*).

5.   Dr. Cheryl Woodson-Johnson (Non-Examining Psychologist)

On April 3, 2012, Dr. Cheryl Woodson-Johnson was asked to review White's medical history for the purposes of making a disability determination for White's benefits application.  *See* AR 680.  Dr. Woodson-Johnson reviewed White's medical records in his Social Security file in their "entirety."  *Id.*  Dr. Woodson-Johnson's report is only one paragraph long, however, and does not indicate what evidence was actually in White's file at the time she examined it.  It is undisputed that Dr. Derogatis's evaluations were not present in White's medical records at this time, nor were those of Dr. Shore, who, as described below, submitted a report in May 2013.  *See* AR 289, 795.  There is no definitive indication one way or the other whether Dr. Coles's report was in the record at the time

4

United States District Court

For the Northern District of California

1    Dr. Woodson-Johnson reviewed White's records.  That said, White claimed in his summary

2    judgment motion that Dr. Woodson-Johnson had not reviewed Dr. Coles's report, Docket No. 13 at

3    7-8, a contention which the Commissioner did not dispute in her summary judgment opposition.  Dr.

4    Woodson-Johnson's entire report reads as follows:

5    > The file has been reviewed in its entirety, there was no evidence of a
     > medically determinable mental impairment at the initial assessment.

6    > There is no evidence of a medically determinable mental impairment
     > currently.  No further development is warranted.  AFFIRMED.

7

8    AR 680.

9              6.    Dr. Michael Shore (Examining Psychologist)

10        In October 2011, White underwent a psychological evaluation arranged by his attorney.[1]  AR

11   48.  White was examined by psychology doctoral student Tami MacAskill under the supervision of

12   Michael Shore, a licensed psychologist.  AR 795.  In Dr. Shore's report White was diagnosed with a

13   "pain disorder associated with both psychological factors and a general medical condition," a "major

14   depressive disorder" (recurrent, moderate), and an alcohol dependence in partial remission.  AR 803.

15   Shore and MacAskill found that White experienced "depressive symptoms everyday that include

16   agitation, concentration difficulties, depressed mood, and insomnia."  AR 794.  They observed that

17   White was "a social and somewhat engaging man, a bit reserved, with a sense of sadness and

18   loneliness, and an irritability as well."  AR 798.  They also found White's "concentration was poor,

19   and his short term memory, [is] clearly a problem area."  Id.  Indeed, they observed that White's

20   mind appeared to be often elsewhere, and he frequently asked to have questions repeated during the

21   evaluation.  AR 799. Nevertheless, the evaluators noted that Mr. White "cooperated fully with [the]

22   assessment" and the results obtained were "clinically valid and representational."  Id.

23        After running a number of tests and conducting an interview with White, Dr. Shore

24   concluded that White was "clinically depressed, but of a form that is quite different [from] the more

25

26        [1]  While Dr. Shore and Ms. MacAskill evaluated White in October 2011, before Dr. Coles
     evaluated him and before Dr. Woodson-Johnson reviewed White's medical records, Dr. Shore did
27   not prepare his report until May 1, 2013.  AR 795.  Because Dr. Shore prepared his report after Dr.
     Coles had evaluated White, Dr. Shore's report discusses Dr. Coles's conclusions and findings.  See
28   AR 798.

common type of depression seen in those who are in pain and struggling financially, this depression [is] a more angry and resentful type of depression."  AR 802.  Dr. Shore rated White in a "Mental RFC Assessment" to be "moderately limited" in his ability to "maintain attention and concentration for extended periods," and "markedly limited" in his ability to "complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  AR 804–05. Using a multi-axial assessment outlined in the *Diagnostic and Statistical Manual of Mental Disorders*, White was assigned a GAF score of 40, indicating "serious impairment in social, occupational or school functioning."  AR 21, 803; *see* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., text rev. 2000) (*DSM-IV-TR*).  Because Dr. Shore's report was prepared after Dr. Coles's, Dr. Shore was able to explain why his GAF score differed materially from Dr. Cole's. Namely, Dr. Shore stated that "Dr. Cole's focus was solely on the level of impairment as would be solely associated with Mr. White's psychological status (he specifically defers to others on the element of physical disability), while this evaluation considers Mr. White's overall level of compromise as associated with both elements together.  This is to my mind the heart of this difference in opinion [with Dr. Cole]."  AR 803.  Dr. Shore's report was placed into record in May 2013.  AR 293.

B.      Procedural Background

        On January 24, 2011, White filed a Title II application for disability insurance benefits, alleging a disability beginning on October 3, 2008.  AR 12.  The claim was denied initially on July 12, 2011, and upon reconsideration on April 5, 2012.  *Id.*  White filed a request for a hearing on April 19, 2012.  *Id.*  White appeared and testified at a hearing held on May 8, 2013 in front of the ALJ.  AR 33.

        At the May 8 hearing, White testified that he had pain in his left shoulder, neck and lower back.  AR 18.  He testified that he had difficulty sleeping and focusing.  *Id.*  He also testified that he had problems moving his neck from side to side, and that he had pain raising his arms to shoulder height.  *Id.*  He said that he suffers from depression, irritability and anxiety.  *Id.*  He also said he had memory problems, and lacked focus and concentration.  *Id.*

United States District Court

For the Northern District of California

1    The ALJ found White not disabled and denied the claim on June 10, 2013.  AR 24.  In his

2  June 10 decision, the ALJ applied the five-step sequential evaluation process for determining

3  whether an individual is disabled within the meaning of the Social Security Act.  AR 12; 20 C.F.R. §

4  404.1520(a).  At Step One, the ALJ found there was no evidence White had engaged in substantial

5  gainful activity since October 3, 2008.  AR 14.  At Step Two, the ALJ found White had "the

6  following severe impairments: left shoulder impingement; left median nerve compression; cervical

7  degenerative disc disease; *mild depression*; cannabis abuse; and alcohol dependence."  *Id.* (emphasis

8  added).  At Step Three, the ALJ found that White did not have an impairment or combination of

9  impairments that met or medically equaled the severity of a listed impairment.  AR 15.

10  Specifically, the ALJ found White's "mild depression" did not satisfy the "paragraph B" criteria.

11  AR 16.  The ALJ next determined that White had the residual functional capacity (RFC) to perform

12  light work as defined by 20 C.F.R. § 404.1567(b), with only a limitation on overhead reaching with

13  the left upper extremity.  AR 17.  According to the ALJ, White could perform occasional overhead

14  reaching with the right upper extremity; he could not do forceful pushing or pulling bilaterally; he

15  could do frequent, but not constant, handing and fingering bilaterally; and he could have no more

16  than occasional public contact.  *Id.*  Applying this RFC in Step Four, the ALJ found White unable to

17  perform his past relevant work.  AR 22.  A vocational expert testified that a person with such an

18  RFC would be capable of performing other jobs that exist in significant numbers in the national

19  economy.  AR 24.  The ALJ included no mental limitations in the hypothetical posed to the

20  vocational expert for this determination.  AR 62-68.  At Step Five, the ALJ relied on the vocational

21  expert's testimony to find White capable of performing other work, and concluded that White was

22  not disabled.  AR 23–24.

23    White requested a review of the ALJ's decision by the Appeals Council on August 6, 2013.

24  AR 7.  The Appeals Council denied the request on October 30, 2014.  AR 1–3.  The ALJ's decision

25  is now the final decision of the Commissioner of Social Security.  On December 22, 2014, White

26  filed this action seeking judicial review of the Commissioner's decision.  Docket No. 1.

27

28

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   DISCUSSION

The district court reviews the Commissioner's final decision under the substantial evidence standard; the decision will be disturbed only if it is not supported by substantial evidence or is based on legal error.  *See* 42 U.S.C. § 405(g); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  The court may review only the reasons provided by the ALJ in the disability determination, and may not affirm the ALJ on a ground upon which he did not rely. *See Brown-Hunter*, 2015 WL 4620123, at *4; *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter*, 2015 WL 4620123, at *6 (quoting *Lingenfelter*, 504 F.3d at 1036).

A.     ALJ's Finding of Mild Depression

White first contests the ALJ's finding at Step Two that he suffers only "mild depression." According to White, the ALJ's ruling impermissibly "downgraded" or disregarded the findings of two psychologists who personally examined White, and who both found that White suffered from a *major* depressive disorder.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Where the opinion of an examining physician is uncontradicted, the Commissioner must provide "clear and convincing" reasons for rejecting that opinion.  *Id.*; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.").  Where contradicted by another doctor, the opinion of an examining doctor can only be rejected for specific

United States District Court
For the Northern District of California

and legitimate reasons that are supported by substantial evidence in the record. *Bayliss*, 427 F.3d at 1216. The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining physician. *Lester*, 81 F.3d at 831.

Following Dr. Derogatis's initial screening finding that White was experiencing serious psychological difficulties, Dr. Shore and Dr. Coles each examined and diagnosed White with major depression of a moderate intensity. AR 658, 665, 722, 795. Dr. Shore's and Dr. Derogatis's evaluations were not reviewed by either Dr. Pearce or Dr. Woodson-Johnson, and neither Pearce nor Woodson-Johnson actually examined White. AR 288–89, 293, 598, 680. Plaintiff suggests, and the Commissioner does not contest, that Dr. Coles's evaluations were not reviewed either by Pearce or Woodson-Johnson either. Mot. at 7–8. The only examining doctor who suggested White's depression was not a substantial impairment was Dr. Rosenberg, but he conceded that depression and mental health issues are beyond the scope of his expertise. AR 695.

White was never examined or evaluated by a psychologist at Social Security's request[2] and the ALJ did not call any medical expert to testify at the hearing. Mot. at 11. Moreover, in his decision, the ALJ did not rely on the state agency consultants' or any other psychologist's opinions to contradict those of the examining psychologists, Dr. Shore and Dr. Coles. *See* AR 16, 20–22. Put simply, the opinions of Drs. Derogatis, Coles, and Shore that White suffers from more than "mild depression" were, as framed by the ALJ, uncontradicted. Hence, as Plaintiff correctly asserts and Defendant does not contest, the ALJ was required to provide "clear and convincing" reasons for rejecting the uncontradicted opinion of the examining psychologists that White was suffering from at least "major depression of a moderate intensity."

The main justification the ALJ stated for finding White suffered from only "mild depression" despite the uncontradicted medical evidence to the contrary was White's apparent lack of prior mental health treatment. AR 22. The Commissioner claims that the ALJ did not err in this regard, citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In *Burch*, the Ninth Circuit held that

---

[2] The Commissioner asserts that the ALJ arranged for a mental health evaluation for White in 2011. Def.'s Opp'n 4. The Commissioner appears mistaken; the evaluation was arranged by White's attorney. AR 48; Pl. Reply Br. 2 n.2.

the ALJ permissibly determined that the claimant's testimony regarding her depression was at least partially incredible where:

> Burch admits she is not being treated for depression.  At times, she has been given psychotropic medication, but *she does not carry a diagnosis of depression* and she has not received care from a mental health practitioner.  There is also no evidence of impairment in her ability to maintain concentration, persistence or pace.  Further, there are no documented episodes of decompensation in the file.

*Id.* (emphasis added) (internal modifications omitted).

The Commissioner's reliance on *Burch* is misplaced.  Most fundamentally, unlike Burch, White *was* diagnosed with major depression of moderate intensity by two separate examining psychologists.  Thus, he carries a "diagnosis of depression" that the ALJ was not free to simply ignore.

Moreover, a claimant's failure to seek medical treatment does not support an inference that the claimant is malingering or otherwise not disabled if the claimant can show a valid reason for not seeking treatment.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  One such accepted reason for not seeking treatment is where the claimant lacks sufficient funds to afford treatment.  *See id.* (holding that disability benefits "may not be denied because of the claimant's failure to obtain treatment he cannot afford").

At the hearing, the ALJ did not ask White why he had not sought treatment for his diagnosed mental health issues.  This is failure to inquire is worrisome, because there was ample evidence in the record before the ALJ that showed that White may have lacked the funds to obtain regular mental health treatment.  Indeed, White told the ALJ that he did not have money to see a doctor about his various physical pains because he been unable to work since October 2008.  AR 38.  He further testified that he stopped taking pain medication because he did not have any money to purchase gas so he could travel to his prescribing physician's office in Oakland.  AR 43.  The record even indicated that White was sufficiently indigent that he was unable to afford to visit his own mother in her nursing home.  AR 772.  Thus, while the ALJ might be correct that White could have received free mental health treatment at a County hospital, the record indicates that White might have lacked the funds to even get to an appropriate facility.  In any event, the Ninth Circuit has

United States District Court

For the Northern District of California

10

United States District Court
For the Northern District of California

1   "particularly criticized the use of a lack of treatment to reject mental complaints both because mental

2   illness is notoriously underreported and because it is a questionable practice to chastise one with a

3   mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v.*

4   *Comm. of Soc. Sec. Admin*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (internal quotation marks and

5   citation omitted).  Hence, the Court concludes that the ALJ's finding that White's purported failure

6   to seek treatment shows that he suffered from only "mild" depression – despite the uncontradicted

7   reports of three examining doctors – does not satisfy the clear and convincing standard.  *See*

8   *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (explaining that "[t]he ALJ in a social

9   security case has an independent duty to fully and fairly develop the record and to assure that the

10  claimant's interests are considered" and thus where there is "[a]mbiguous evidence," in the record,

11  the ALJ must conduct an "appropriate inquiry.").

12      The ALJ's alternate explanation for his "mild depression" finding is similarly unconvincing.

13  According to the ALJ, Dr. Shore's finding of "major depressive disorder" was inconsistent with Dr.

14  Shore's own evaluation notes.  AR 22. For instance, the ALJ stated that Dr. Shore's testing showed

15  no deficits in attention or cognitive functioning.  AR 22, 800.  This is not accurate.  Dr. Shore did

16  find moderate impairment on a memory subtest, *id.*, and indicated that White's "concentration was

17  poor, and his short term memory [is] clearly a problem area."  AR 799.  The ALJ also wrote that Dr.

18  Shore's depression diagnosis was inconsistent with a statement in his report that White was "a social

19  and somewhat engaging man."  AR 798.  However, the ALJ only quoted part of language; the entire

20  sentence in Dr. Shore's report reads: "He is a social and somewhat engaging man, a bit reserved,

21  with a sense of sadness and loneliness, and an irritability as well."  *Id.*  The ALJ's reliance on Dr.

22  Shore is not supported by the record.

23      Finally, the Commissioner tries to defend the ALJ's mild depression finding by asserting that

24  White's mental impairments are of a "situational nature" and cannot support a disability finding.

25  Opp. Br. at 5–6.  Specifically, the Commissioner cites two Eighth Circuit cases for the proposition

26  that an ALJ does not err when she does not consider impairments of an alleged situational nature.

27  *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039–40

28  (8th Cir.2001).  And the Commissioner noted that the following evidence in the record could support

United States District Court

For the Northern District of California

1  a finding that White was suffering from only situational rather than chronic depression: his mother's

2  deteriorating health and a recent divorce, AR762; mistreatment by his employers, AR770; his

3  physical condition and his desire to do some other kind of work, AR770; his loss of respect from

4  people and his own sense of self-respect had been eroded, AR 770; and retirement concerns, AR

5  771.  *Id.* at 5.

6         Even assuming, *arguendo*, that the Eighth Circuit cases might apply here, and further

7  assuming, *arguendo*, that White's depression really was "situational" as in *Gates* and *Dunahoo*, that

8  would still be irrelevant because the ALJ did not find (or even suggest) that White's impairment was

9  situational in nature.  As Plaintiff correctly asserts, this Court may only review the actual reasons

10  provided by the ALJ in his decision, and may not affirm the ALJ on a ground upon which he did not

11  rely.  *See Brown-Hunter*, 2015 WL 4620123, at *3,6; *Garrison*, 759 F.3d at 1010.  Thus this Court

12  may not affirm the ALJ's finding of mild depression on the ground pressed by the Commissioner but

13  not found by the ALJ.

14         In sum, the ALJ did not provide "clear and convincing" reasons in his decision for rejecting

15  the uncontradicted opinions of three separate examining psychologists that found that White suffers

16  from more than "mild depression."

17  B.    White's Credibility

18         Plaintiff also contests the ALJ's credibility findings, whereby the ALJ found that White

19  lacked credibility with regard to the severity of his subjectively reported symptoms of depression,

20  disabling pain, and insomnia.

21         To determine whether a claimant's testimony regarding subjective pain or symptoms is

22  credible, an ALJ must engage in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36

23  (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective

24  medical evidence of an underlying impairment which could reasonably be expected to produce the

25  pain or other symptoms alleged."  *Id.* at 1036 (citation omitted).  "The claimant, however, need not

26  show that her impairment could reasonably be expected to cause the severity of the symptom she has

27  alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id.*

28  If the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the

United States District Court

For the Northern District of California

1  claimant's testimony about the severity of her symptoms only by offering specific, clear and

2  convincing reasons for doing so." *Id.*

3         Here, the ALJ concluded that White's medically determinable impairments could reasonably

4  be expected to produce the pain or other symptoms White alleged, namely shoulder and lower back

5  pain, insomnia, and depression, thus satisfying the first step of the credibility analysis.  AR 18.

6  Thus, as the Commissioner acknowledges, the ALJ was obligated to offer "specific, clear and

7  convincing reasons" in support of his adverse credibility determinations.  *Lingenfelter*, 504 F.3d at

8  1036.

9         1.    Depression

10        As noted above, the ALJ largely discredited White's allegation of depression or mental

11  impairments because he had not previously sought mental health treatment.  AR 21.  But as

12  previously noted, if the ALJ was going to rely on White's treatment history (or lack thereof) to make

13  an adverse credibility finding, he was required to at least consider any reasonable excuse White

14  might have for not undergoing treatment that was apparent on the face of the record.  *See Orn*, 495

15  F.3d at 638.  Here, White sufficiently documented that he lacked funds necessary for travel to obtain

16  other treatment, an issue the ALJ did not sufficiently address or consider.  Thus, the ALJ's adverse

17  credibility determination with respect to White's claimed depression cannot stand.  *Lingenfelter*, 504

18  F.3d at 1036 (holding that ALJ may "reject the claimant's testimony about the severity of her

19  symptoms only by offering specific, clear and convincing reasons for doing so.").

20        2.    Disabling Pain

21        The ALJ found White's testimony regarding the amount of pain he suffered to be less than

22  credible in light of the daily activities White apparently participated in, which included bicycling,

23  shooting pool, collecting scrap metal, and cleaning his house.  AR 21.

24        The Ninth Circuit has recognized that an ALJ may make an adverse credibility determination

25  where there are "inconsistencies . . . between the testimony and the claimant's conduct," or where

26  "the claimant engages in daily activities inconsistent with the alleged symptoms."  *Molina*, 674 F.3d

27  at 1113.  However, ALJs "must be especially cautious in concluding that daily activities are

28  inconsistent with testimony about pain, because impairments that would unquestionably preclude

13

United States District Court

For the Northern District of California

work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")  Thus, "[r]ecognizing that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held "that only if her level of activity were inconsistent with a claimant's claimed limitations would these activities have any bearing on her credibility." *Garrison*, 759 F.3d at 1016 (internal modifications and brackets omitted).

The ALJ first noted that White's admitted bicycle riding undermined his claim of suffering severe shoulder, neck and back pain.  AR 21.  The ALJ stated in his decision that White told a doctor in 2012 that he was able to bike up to 20 miles, and bikes most days up to 5 miles.  *Id.* (citing AR 771, 775).  However, White testified at his hearing that he had only ridden as far as 15 miles once in the last 5 years, and normally would ride his bicycle a little under a mile before returning home.  AR 59 –60.  More importantly, however, even if White was biking a significant distance every day, it would not undercut his credibility vis-a-vis his specific claims of upper body injury because the relevant activity (*i.e.*, biking) is not obviously "inconsistent with [White's] claimed limitations" (*e.g.*, that he could not reach or hoist weights overhead, or engage in forceful pushing or pulling bilaterally).

The ALJ next noted that White's credibility was undercut by his admission that he played pool for roughly half-an-hour on a daily basis.[3]  Nevertheless, the ALJ's reliance on White's billiards playing suffers from the same defect as his reliance on White's bicycling – an ability to play billiards for (at most) half and hour a day is not plainly inconsistent with White's claimed impairments and pain.  Nor would the ability to play pool for thirty minutes be easily transferable to

---

[3] Moreover, White appears to have been somewhat inconsistent in his recounting of how long his billiards sessions would last:  In a September 2011 questionnaire, White stated that he shot pool regularly for ten to fifteen minutes a day.  AR 241.  Seven months later, White claimed he stopped playing pool.  AR 249.  However, at his hearing in May 2013, White testified he was shooting pool for half an hour a day.  AR 61.

United States District Court

For the Northern District of California

1    a work environment.  *Garrison*, 759 F.3d at 1016.  Thus, White's limited admitted ability to play

2    pool is not a "clear and convincing" reason supporting the ALJ's adverse credibility finding.  *See*

3    *Smolen*, 80 F.3d at 187 n. 7 ("The Social Security Act does not require that claimants be utterly

4    incapacitated to be eligible for benefits . . . .").

5         Nor was the ALJ correct to point to White's admissions that he occasionally recycles scrap-

6    metal and cleans up around the house in finding that White's allegations of pain were not credible.

7    AR 21.  Although White collected scrap metal for money, he claims he had the potential buyer

8    perform all the lifting and loading.  AR 769–70.  And while White cleaned house occasionally, he

9    often had a friend come over to help.  AR 52.  Notably, none of this testimony is inconsistent with

10   White's claimed limitations.  *Garrison*, 759 F.3d at 1016 (noting that testimony that claimant

11   occasionally did some cleaning around the house, while "avoiding any heavy lifting" was not

12   inconsistent with the pain described in her testimony, and thus could not support adverse credibility

13   finding).

14        The ALJ further erred where he found White lacked credibility because he was able to

15   demonstrate the act of turning a steering wheel at the hearing without showing any pain.  That is, the

16   ALJ found White's reports of pain to lack credibility because he was able to pantomime the act of

17   steering a car steering wheel without grimacing.  AR 21.  Of course, pretending to steer a non-

18   existent steering wheel (*i.e.*, rotating one's arms in the air) is quite different from actually rotating a

19   steering wheel in a car.  The fact that one could do the former without showing visible pain says

20   very little about whether the act of actual steering could only be done with significant difficulty – as

21   White had claimed.

22        Finally, the ALJ discounted White's testimony regarding his pain because White apparently

23   told Dr. Coles that he was looking for work as an ironworker manager, indicating that White

24   believed he was capable of working.  *Id.*.  White claims he never made such statement to Dr. Coles,

25   and notes that Dr. Coles later wrote in the same report cited by the ALJ that "Mr. White stated that

26   he is not presently looking for work . . . ."  AR 779.  Thus, there may not be any inconsistency in

27   White's statement.  But even if there were, the fact that White may have once indicated a *desire* to

28

15

1   work as a "manager" would not necessarily undercut his testimony he was suffering from serious

2   and debilitating pain that would prevent him from working as a laborer.

3       3.    <u>Insomnia</u>

4       Finally, the ALJ found White's testimony regarding his difficulty sleeping to be less than

5   credible because White gave one answer that was inconsistent with the remainder of this testimony.

6   Specifically, after testifying at some length that on "most nights" he sleeps "erratically" and wakes

7   up "every couple of hours" *see e.g.*, AR 54, White and his lawyer engaged in the following

8   exchange:

9           Q:  Approximately how many hours of, of continuous sleep do you get
           during the night?

10

11           A:  I get five to eight hours

12           Q:  Well, you testified just before that you wake up during the night
           after every two or three hours, I believe?

13           A:  Yeah, most nights.

14           Q:  So in terms of approximately how many hours of uninterrupted
           sleep you get during the night, what's, what's the average?

15

16           A:  Probably two to three hours.

17   AR 55; *see also* AR 53-55.

18       A review of the record indicates that White testified consistently that he typically woke up

19   every two or three hours.  His singular answer that he gets "five to eight hours" of "continuous

20   sleep" a night is a "minor inconsistency" that cannot, standing alone, support a adverse credibility

21   determination under the heightened clear and convincing standard .  *See, e.g.*, *Todd v. Astrue*, No.

22   11-cv-782-DTB, 2011 WL 5909840, at *3 (C.D. Cal. Nov. 28, 2011); *Leon-Barrios v. INS*, 116 F.3d

23   391, 393 (9th Cir. 1997) ("Generally, minor inconsistencies and minor omissions relating to

24   unimportant facts will not support an adverse credibility finding."); *Hatcher v. Sec., Dept. of Health*

25   *and Human Servs.*, 898 F.2d 21, 24 (4th Cir. 1989) (holding that a "minor inconsistency in

26   testimony" is not sufficient for purposes of adverse credibility finding).

27       In sum, the ALJ has not set forth clear and convincing reasons to discredit White's

28   testimony.

C.      Harmless Error Review

A reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.  *Stout*, 454 F.3d at 1056.  That is, "[a]n error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'"  *Brown-Hunter*, 2015 WL 4620123, at *6 (quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

A claimant will be found to suffer a disability if he satisfies the "paragraph B" criteria at Step Three of the five-step analysis.  AR 13; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  Based on his "mild depression" finding, the ALJ determined that White did not satisfy any "paragraph B" criteria.  AR 16.  If fully credited, however, the diagnoses of Dr. Shore and Dr. Cole that White suffered from far more severe depression could alter the determination of whether the "paragraph B" criteria are satisfied, and consequently result in a different disability determination.  Thus the "mild depression" finding cannot be a harmless error, because this Court cannot say that it was "inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1115.

Similarly, the "mild depression" finding is not a harmless error at Step Five of the analysis.  The ALJ presented no mental limitations in his hypothetical to the vocational expert.  AR 62, 65–67.  The ALJ also noted that even if he included a limitation of "occasional public contact," it would not change the vocational expert's determination.  AR 23–24.  However, the diagnoses of Dr. Shore and Dr. Cole, if properly credited, would require a reassessment of what mental limitations to include in any hypothetical to the vocational expert.  A hypothetical that reflects significant mental limitations as found by Drs. Shore and Cole could alter the vocational expert's determination of White's work ability, and hence his disability.  Indeed, if on remand the ALJ finds White's mental impairment as asserted by White, the ALJ might find that there would be no work available in a competitive labor market for White; the same finding the vocational expert made in response to White's attorney's hypothetical that included significant mental impairments.  *See* AR 68.  Therefore, the ALJ's "mild depression" determination is not a harmless error, and remand is required on this ground alone.

Nor are the ALJ's erroneous credibility determinations obviously harmless.  Had the ALJ credited White's testimony regarding the extent of his pain, depression, and other symptoms, it is at

United States District Court
For the Northern District of California

least reasonably likely the ALJ might have reached a different decision. Thus, the ALJ's credibility determinations cannot be said to be harmless. *Molina*, 674 F.3d at 1115.

That said, "a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). Nor can this Court adequately assess whether the "ALJ would be *required* to determine the claimant disabled" on remand. *See Orn*, 495 F.3d at 640 (emphasis added); *see also Lingenfelter*, 504 F.3d at 1041 (explaining that a federal court should only remand for an award of benefits where "the ALJ would clearly be required to award benefits" on remand). Put differently, White has not conclusively established to this Court that he is legally disabled. Consequently, the Court must remand to the Commissioner for further proceedings consistent with this Order. *See Treichler*, 775 F.3d at 1099 (noting that the courts should ordinarily remand to the Commissioner in Social Security cases); *Lingenfelter*, 504 F.3d at 1041.

### IV.    CONCLUSION

The Court grants the Plaintiff's motion for summary judgment, reverse the Commissioner's prior decision, and remands to the Commissioner for further proceedings.

This order disposes of Docket No. 13

IT IS SO ORDERED.

Dated:  August 10, 2015

EDWARD M. CHEN
United States District Judge

18